| | |
|---|---|
| **DISTRICT COURT, ADAMS COUNTY, COLORADO**<br>1100 Judicial Center Drive<br>Brighton, CO  80601<br>Telephone:  (303) 659-1161 | DATE FILED: October 21, 2015 10:45 AM<br>FILING ID: 6C2DD64F1EAFC<br>CASE NUMBER: 2015CV31726 |
| **PLAINTIFF:** NATHAN REYNOLDS and CHELSEA TRONICK<br><br>v.<br><br>**DEFENDANTS:** DOUBLE TAP DEFENSE, LLC, and HORNADY MANUFACTURING COMPANY. | ▲   COURT USE ONLY   ▲ |
| *Attorneys for Plaintiffs:*<br>Christian H. Hendrickson, #32225<br>Jared Berg, # 35757<br>Sherman & Howard L.L.C.<br>633 17th Street, Suite 3000<br>Denver, CO  80202<br>Telephone:     (303) 297-2900<br>Facsimile:      (303) 298-0940<br>E-mail:   chendrickson@shermanhoward.com<br>              jberg@shermanhoward.com | Case Number:<br><br>Div. |
| **COMPLAINT WITH JURY DEMAND** ||

Plaintiffs NATHAN REYNOLDS and CHELSEA TRONICK ("Plaintiffs"), by and through counsel, hereby assert their complaint against DOUBLE TAP DEFENSE, LLC, and HORNADY MANUFACTURING COMPANY (collectively, "Defendants"), stating as follows:

### INTRODUCTION

This case arises out of products that were defectively designed and manufactured, namely a handgun and ammunition supposedly safe for use with that handgun.  The defects caused the handgun to misfire while being used by Plaintiff Nathan Reynolds, a U.S. military veteran and knowledgeable and experienced firearms user.  The misfiring of the firearm occurred when both chambers of an "over/under" handgun fired at the same time.  This "double discharge" caused

LITIGATION/4578362.1



tremendous force and recoil, and instantaneously shattered Mr. Reynolds' thumb on his right and dominant hand. As a result, Mr. Reynolds suffered significant and life-altering injuries, and he and his wife, Plaintiff Chelsea Tronick, have suffered extensive damages.

## PARTY ALLEGATIONS

1. Nathan Reynolds ("Mr. Reynolds") is an individuals residing at 9721 West 104th Drive, Westminster, Colorado 80021.

2. Chelsea Tronick ("Ms. Tronick") is an individual residing at 9721 West 104th Drive, Westminster, Colorado 80021. Ms. Tronick and Mr. Reynolds are married.

3. Upon information and belief, Double Tap Defense, LLC ("Double Tap"), is a Georgia Limited Liability Company doing business in Colorado.

4. Upon information and belief, Hornady Manufacturing Company ("Hornady") is a Nebraska Corporation doing business in Colorado.

5. Venue is proper in this Court because Defendants do business in and create products marketed in and sold in this County, and the handgun at issue was purchased in this County.

6. This Court has jurisdiction over this matter under § 13-1-124, C.R.S., as Defendants do business in Colorado, and this action involves products sold into Colorado and damages suffered by Colorado residents.

## GENERAL ALLEGATIONS

7. On or about September 4, 2013, Mr. Reynolds lawfully purchased a Titanium Tactical Pocket Pistol, which is a .45 ACP (.45 caliber) handgun designed, manufactured, and sold by Double Tap Defense.

8. Mr. Reynolds purchased the firearm from a dealer located in Westminster, Adams County, Colorado.

LITIGATION/4578362.1

9. Around the same time, Mr. Reynolds lawfully purchased in Colorado a box of Hornady Critical Defense (45 Auto, 185 gr FTX) ammunition, which was designed, manufactured, and sold by Hornady Ammunition and/or Hornady Manufacturing

10. On October 26, 2013, Mr. Reynolds planned to use the Hornady ammunition in the Double Tap Defense handgun, and practice shooting the firearm in a rural area.

11. Mr. Reynolds reviewed the applicable manual of instructions, and, based on that review and his extensive experience and training in the safe use of handguns, loaded the Double Tap Defense handgun with the Hornady ammunition.

12. The handgun was loaded with two bullets.

13. The handgun was supposed to fire one chamber at a time, with one bullet discharging and being shot per one pull of the trigger.

14. When Mr. Reynolds released the safety and aimed the handgun at an inanimate target, he properly held the firearm with two hands and pulled the trigger. Upon information and belief, both bullets were struck by the hammer of the firearm, which "double discharged" meaning it simultaneously fired both bullets.

15. The Double Tap handgun was thrust back into Mr. Reynolds' right hand and recoiled with tremendous force, instantaneously breaking his right thumb and causing significant damage to other surrounding parts of his thumb joint and hand.

16. Mr. Reynolds was in immediate and excruciating pain, and promptly sought emergency assistance.

17. Mr. Reynolds was determined to have severely broken his thumb and sustained multiple other significant injuries to his thumb joint and hand.

18. Mr. Reynolds required surgery, which was painful and has not been successful in addressing his injuries.

19. Mr. Reynolds will need additional medical treatment, including complete joint replacement surgery for his thumb joint in his dominant right hand. He will be permanently impaired and impacted as a result of the incident.

20.     As a result of the incident, Mr. Reynolds has lost wages and work opportunities, his earning potential is reduced, he has had extensive medical treatment, and he has suffered annoyance, inconvenience, and other mental and physical pain and suffering.

21.     Also as a result of this incident, Ms. Tronick has lost the assistance of Mr. Reynolds, and other consortium services and benefits she obtained from Mr. Reynolds prior to his injury.

## FIRST CLAIM FOR RELIEF
### (Strict Product Liability – Double Tap Defense, LLC)

22.     Plaintiffs incorporate the above allegations as though fully set forth herein.

23.     Double Tap is a product manufacturer and seller within the meaning of the Colorado Product Liability Act, §§ 13-21-401, *et seq*. Double Tap designed, manufactured, distributed, and/or sold the Tactical Pocket Pistol handgun that was a or the source of Plaintiffs' injuries, damages, and losses.

24.     The handgun is a product within the meaning of the Act.

25.     Double Tap owed a duty to Mr. Reynolds to, among other things, design, manufacture, and sell a product that was reasonably safe in construction, which was appropriately designed, which did not materially deviate from applicable design specifications, and which otherwise did not deviate in some material way from otherwise identical units in Double Tap's product line.

26.     Double Tap owed a duty to Mr. Reynolds to manufacture and sell a product that conformed to its implied warranties, including, but not limited to, the implied warranty that Double Tap's products were safe for their intended use.

27.     The handgun was a or the source and cause of Plaintiff's injuries, damages, and losses, was defective, and was not safe and instead unreasonably dangerous to the consumer, because it did not conform to Double Tap's implied warranties and because it did not function properly and instead only functioned in a manner that caused significant injury to its user.

28. The handgun was designed, manufactured, and distributed by Double Tap and reached Mr. Reynolds without substantial change in the condition in which it was sold.

29. Double Tap's defective handgun caused Plaintiffs' injuries, damages, and losses.

30. Double Tap is in the business of selling handguns for public use.

31. Because Double Tap designed, manufactured, and sold the defective and unsafe handgun that was a or the source of Plaintiffs' injuries, damages, and losses, which handgun was defective and not reasonably safe for public use, and which did not conform to the implied warranties regarding the product, Double Tap is strictly liable to Plaintiffs for harm proximately caused by its manufacture and sale of a defective product.

32. Plaintiffs have been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Strict Product Liability – Hornady Manufacturing Company)

33. Plaintiffs incorporate the above allegations as though fully set forth herein.

34. Hornady is a product manufacturer and seller within the meaning of the Colorado Product Liability Act, §§ 13-21-401, *et seq.* The Hornady parties designed, manufactured, distributed, and/or sold the Hornady Critical Defense ammunition that was a or the source of Plaintiffs' injuries, damages, and losses.

35. The ammunition is a product within the meaning of the Act.

36. Hornady owed a duty to Mr. Reynolds to, among other things, design, manufacture, and sell a product that was reasonably safe in construction, which was appropriately designed, which did not materially deviate from applicable design specifications, and which otherwise did not deviate in some material way from otherwise identical units in Hornady's product line.

37. Hornady owed a duty to Mr. Reynolds to manufacture and sell a product that conformed to its implied warranties, including, but not limited to, the implied warranty that Hornady's products were safe for their intended use.

38. The Hornady ammunition was a or the source and cause of Plaintiff's injuries, damages, and losses, was defective, and was not safe and instead unreasonably dangerous to the consumer, because it did not conform to Hornady's implied warranties and because it did not function properly and instead only functioned in a manner that caused significant injury to its user.

39. The ammunition was designed, manufactured, and distributed by Hornady and reached Mr. Reynolds without substantial change in the condition in which it was sold.

40. Hornady's defective ammunition caused Plaintiffs' injuries, damages, and losses.

41. Hornady is in the business of selling ammunition for public use.

42. Because Hornady designed, manufactured, and sold the defective and unsafe ammunition that was a or the source of Plaintiffs' injuries, damages, and losses, which ammunition was defective and not reasonably safe for public use, and which did not conform to the implied warranties regarding the product, Hornady is strictly liable to Plaintiffs for harm proximately caused by its manufacture and sale of a defective product.

43. Plaintiffs have been damaged in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
(Breach of Warranties – Double Tap Defense, LLC)

44. Plaintiffs incorporate the above allegations as though fully set forth herein.

45. Double Tap owed a duty to Mr. Reynolds to design and manufacture and sell a handgun product that conformed to their express and implied warranties, including but not limited to, the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

46. The handgun designed and manufactured by Double Tap that caused injuries to Mr. Reynolds was defective, did not fire properly, and would not pass without exception in the trade, and the sale of such a handgun was thus in breach of the warranty of merchantability.

47. The handgun designed and manufactured by Double Tap that caused injuries to Mr. Reynolds was defective, did not fire properly, and was not fit for the uses and purposes

intended by either Mr. Reynolds or Double Tap, i.e., for shooting by the public. The sale was thus a breach of the implied warranty of fitness for a particular use.

48. Because Double Tap designed, manufactured, and sold the handgun, the condition of which breached such express and implied warranties, Double Tap is liable to Plaintiffs for the harm proximately caused by their sale of a defective handgun.

49. Plaintiffs have been damaged by such breaches in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (Breach of Warranties – Hornady Manufacturing Company)

50. Plaintiffs incorporate the above allegations as though fully set forth herein.

51. Hornady owed a duty to Mr. Reynolds to design, manufacture, and sell ammunition product that conformed to their express and implied warranties, including but not limited to, the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

52. The ammunition designed and manufactured by Hornady that caused injuries to Mr. Reynolds was defective, did not fire properly, and would not pass without exception in the trade, and the sale of such ammunition was thus in breach of the warranty of merchantability.

53. The ammunition designed and manufactured by Hornady that caused injuries to Mr. Reynolds was defective, did not fire properly, and was not fit for the uses and purposes intended by either Mr. Reynolds or Hornady, i.e., for use in connection with the shooting of handguns by the public. The sale was thus a breach of the implied warranty of fitness for a particular use.

54. Because Hornady designed, manufactured, and sold the ammunition, the condition of which breached such express and implied warranties, Hornady is liable to Plaintiffs for the harm proximately caused by their sale of a defective handgun.

55. Plaintiffs have been damaged by such breaches in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
(Negligence and Negligent Misrepresentation – Double Tap Defense, LLC)

56. Plaintiffs incorporate the above allegations as though fully set forth herein.

57. Double Tap owed a duty to consumers to act reasonably in the design, manufacture, and sale of the handgun, including in making representations about the uses, features, and benefits of the handgun.

58. At the time of the sale of its handgun, Double Tap knew or should have known that the handgun was not reasonably reliable or appropriate for use by the public, and that the use of such equipment created an unreasonable risk of harm to the ultimate user of the handgun.

59. Among other issues, there have been numerous incidents of "double discharge" by Double Tap's Tactical Pocket Pistol.

60. Double Tap breached the duties it owed to consumers of its Tactical Pocket Pistol handgun by negligently designing and/or manufacturing the handgun, and by selling a handgun that it knew or reasonably should have known was not reasonably reliable or safe for use by the public based on its design and/or manufacture.

61. Double Tap's breaches of the duties described above were a proximate cause of Plaintiffs' injuries, damages, and losses.

62. Plaintiffs have been damaged in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
(Negligence and Negligent Misrepresentation – Hornady Manufacturing and Hornady Ammunition)

63. Plaintiffs incorporate the above allegations as though fully set forth herein.

64. Hornady owed a duty to consumers to act reasonably in the design, manufacture, and sale of the ammunition, including in making representations about the uses, features, and benefits of the ammunition.

65. At the time of the sale of its ammunition, Hornady knew or should have known that the ammunition was not reasonably reliable or appropriate for use by the public, and that the

use of its ammunition created an unreasonable risk of harm to the ultimate user of the ammunition.

66. Hornady breached the duties it owed to consumers of its Hornady Critical Defense ammunition by negligently designing and or manufacturing the ammunition, and by selling ammunition that it knew or reasonably should have known was not reasonably reliable or safe for use by the public based on its design and/or manufacture.

67. Hornady's breaches of the duties described above were a proximate cause of Plaintiffs' injuries, damages, and losses.

68. Plaintiffs have been damaged in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
(Loss of Consortium – Against All Defendants)

69. Plaintiffs incorporate the above allegations as though fully set forth herein.

70. Ms. Tronick is and has been married to Mr. Reynolds, and has lived and cohabitated with him since the couple was married.

71. As a result of his injuries caused by Defendants' products, Ms. Tronick has suffered the loss of Mr. Reynolds spousal companionship and services, including without limitation, help around the house, intimacy, and other related services, thus damaging Ms. Tronick and impacting the parties' relationship.

72. Ms. Tronick has been damaged in an amount to be proven at trial.

### DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs Nathan Reynolds and Chelsea Tronick demand judgment in their favor and against Defendants Double Tap Defense, Hornady Ammunition and Hornady Manufacturing, jointly and severally, as follows:

A. In favor of Plaintiffs and against Defendants on all claims for relief;

B. For an award of damages, including past and future monetary and non-monetary damages, general and special damages, incidental and consequential damages, medical and

pharmaceutical damages, lost income and loss of earning potential, lost consortium, medical expenses, loss of companionship, impairment and loss of quality and enjoyment of life, disability and disfigurement, physical and mental pain and suffering, emotional distress, and other ordinary, incidental, and consequential damages;

C. For prejudgment and postjudment interest as allowed by law;
D. For costs, attorneys' fees, and expert witness fees as allowed by law; and
E. For such other and further relief as the Court deems appropriate.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED: October 21, 2015.

SHERMAN & HOWARD L.L.C.


 s/ Christian H. Hendrickson
Christian H. Hendrickson
Jared Berg
*Attorneys for Plaintiff*

Plaintiff's Address:
9721 West 104th Drive
Westminster, CO  80021